**United States District Court**
For the Northern District of California

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7

8   JAY L. OTTOLINI,                          No. C-11-0477 EMC

9              Plaintiff,

10        v.                                  **ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'
11  BANK OF AMERICA, *et al.*,                MOTION TO DISMISS**

12             Defendant.                     **(Docket No. 31)**
                                  /
13  _____

14

15        Plaintiff Jay L. Ottolini has filed suit against Defendants Bank of America, N.A. ("B of A");

16  BAC Home Loans Servicing, LP, formerly known as Countrywide ("BAC" or "Countrywide"); and

17  ReconTrust Company, N.A, essentially challenging their actions related to the foreclosure of real

18  property.  Currently pending before the Court is Defendants' motion to dismiss the first amended

19  complaint ("FAC").  Having considered the parties' briefs, as well as their oral argument at the hearing,

20  the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion.

21              I.      <u>FACTUAL & PROCEDURAL BACKGROUND</u>

22        In the FAC, Mr. Ottolini alleges as follows.  Mr. Ottolini purchased the real property at issue

23  some time before December 2004.  *See* Compl. ¶ 9.  In December 2004, Mr. Ottolini secured a loan

24  on the property from Investors Trust Mortgage Corp.  *See id.* ¶ 10.  In February 2005, Countrywide

25  acquired the servicing rights to the loan.  *See id.* ¶ 11.

26        In June 2005, Mr. Ottolini suffered an industrial injury to his back.  Thereafter, he was not

27  able to continue his regular employment and began receiving workers compensation benefits.  *See*

28  *id.* ¶¶ 13-14.  In July 2008, Mr. Ottolini informed Countrywide that his workers compensation

benefits were ending and so he would not have the money to pay his mortgage. *See id.* ¶ 16. Mr. Ottolini asked Countrywide "for solutions and possible modification options [to] the loan." *Id.* Countrywide responded that there were no alternative and that Mr. Ottolini was still required to make the necessary payments. *See id.* ¶ 17.

Mr. Ottolini failed to make the loan payments for September and October 2008. *See id.* ¶ 18. He did, however, make the necessary payment for November 2008 and further sent Countrywide an additional $1,100 "to help cure some of the past due amount." *Id.* ¶ 19. Countrywide returned the payment to Mr. Ottolini. *See id.* ¶ 20. Mr. Ottolini continued to contact Countrywide "in an effort to explore options to avoid foreclosure" but each time he was told that there were no options. *See id.* ¶ 21.

In January 2009, a notice of default was recorded on the property at issue. *See id.* Although a § 2923.5 declaration attached to the notice stated that there had been an attempt to contact Mr. Ottolini with due diligence, that was not in fact the case. Furthermore, when Mr. Ottolini had contacted Countrywide, it never informed him that he had a right to a meeting so that his financial situation could be assessed. *See id.*

After the notice of default was recorded, "Countrywide finally requested a series of documents from [Mr. Ottolini], in order to pursue a modification to the loan." *Id.* ¶ 22. Mr. Ottolini repeatedly provided the requested documents but, according to Countrywide, it never received them. *See id.* ¶¶ 23-25. At some point thereafter, Countrywide was acquired by B of A and then renamed BAC. *See id.* ¶¶ 26-27.

In or about June 2010, the deed of trust was assigned to BAC. *See id.* ¶ 35. In addition, in June 2010, a notice of trustee's sale was recorded which listed as the sale date July 12, 2010. *See id.* ¶ 35. However, that sale date was inconsistent with the sale date that was published in the newspaper. More specifically, on three different dates in June 2010, Defendants publicized in the Sonoma Herald-Recorder a sale date of July 8 instead of July 12. *See id.* ¶ 34.

Prior to the sale date, Mr. Ottolini contacted B of A because he still had not received a response on his loan modification instruction. B of A stated that it was still missing documentation

**United States District Court**
For the Northern District of California

1    and would send Mr. Ottolini another application.  B of A failed to do so, however, and so Mr.

2    Ottolini called B of A again.  B of A stated that it would send out a packet.  *See id.* ¶ 37.

3            On July 12, 2010 – *i.e.*, the actual date of sale – Mr. Ottolini finally received a packet from

4    BAC which contained a loan modification application.  "In the packet was a letter dated July 8,

5    2010, instructing [him] that he had until August 7, 2010[,] to return the financial documents to

6    determine eligibility for the modification programs."  *Id.* ¶ 38.  "[Mr. Ottolini] immediately called

7    [B of A], to review the packet of received documents.  At that time foreclosing defendants informed

8    [him] that nothing further could be done because the property [had] reverted back to the investor."

9    *Id.* ¶ 39.

10           Subsequently, Mr. Ottolini spoke to various departments within B of A and "was given

11   conflicting information on what had to be done."  *Id.* ¶ 40.  Approximately a month later, he was

12   served with an unlawful detainer action.  *See id.* ¶ 41.

13           Based on, inter alia, the above allegations, Mr. Ottolini has asserted the following claims: (1)

14   negligence; (2) fraud; (3) wrongful foreclosure; (4) breach of contract; and (5) infliction of

15   emotional distress.  It appears that Mr. Ottolini is only seeking, at this point, damages for

16   Defendants' alleged wrongful conduct – *i.e.*, he is not asking that the allegedly wrongful foreclosure

17   be set aside.

18                              **II.    DISCUSSION**

19   A.    Legal Standard

20           Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

21   failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to

22   dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks*

23   *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court

24   must take all allegations of material fact as true and construe them in the light most favorable to the

25   nonmoving party, although "conclusory allegations of law and unwarranted inferences are

26   insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

27   2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough

28   facts to state a claim to relief that is plausible on its face.'"  Id.  "A claim has facial plausibility when

**United States District Court**
For the Northern District of California

1    the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2    defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*

3    *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to

4    a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted

5    unlawfully." *Id.*

6    B.    <u>Tender</u>

7        Defendants argue first that all of the claims, except for the claim for infliction of emotional

8    distress, should be dismissed because each of them is predicated on a wrongful foreclosure and Mr.

9    Ottolini has failed to allege tender of the indebtedness owed.

10        As a preliminary matter, the Court notes that Mr. Ottolini has not expressly asked for the

11    foreclosure to be set aside. At the hearing, he confirmed that he was not seeking this relief and was

12    asking instead for damages only. Although Mr. Ottolini is seeking only damages as relief, that does

13    not mean that Defendants' tender argument is therefore inapplicable. The tender rule applies not

14    only to suits seeking to set aside a foreclosure but also to certain suits seeking damages.

15        In *Arnolds Management Corp. v. Eischen*, 158 Cal. App. 3d 575 (1984), for example, the

16    plaintiff sought both a setting aside of the foreclosure and damages. The plaintiff's request for

17    damages was based on an alleged wrongful foreclosure as well as negligence and fraud – more

18    specifically, because the defendant had represented that the foreclosure sale was set for a certain

19    date when it was in fact set for an earlier date. *See id.* at 577-78. The *Arnolds* court did not make

20    any distinction between the claim to set aside the foreclosure and the claim for damages with respect

21    to the need to allege tender. Instead, it held that the plaintiff had to allege tender of the indebtedness

22    owed "as an essential element of any causes of action based upon irregularities in the sale procedure.

23    To hold otherwise would permit plaintiffs to state a cause of action without the necessary element of

24    damages to themselves." *Id.* at 580. *Arnolds* suggests that a plaintiff must plead tender for not only

25    a cause of action to set aside a foreclosure based on an irregular sale but also for "[a] cause of action

26    'implicitly integrated' with the irregular sale." *Id.* at 579; *cf. FPCI RE-HAB 01 v. E & G*

27    *Investments, Ltd.*, 207 Cal. App. 3d 1018, 1024 (1989) (in action for money damages based on

28    allegation that defendants conspired to conduct foreclosure sale in a manner calculated to chill the

1    bidding and allow them to purchase property at less than market value, ruling in favor of defendants

2    on summary judgment because plaintiff had failed to provide any evidence that any irregularities in

3    sale caused it damage, "either through its own tender of the amount or indebtedness or that someone

4    else was ready, willing and able to purchase the property").

5           In the instant case, Mr. Ottolini argues that, even so, the tender rule has no application here

6    because the rule applies only where a foreclosure is voidable, as opposed to void, and his position is

7    that the foreclosure is void.

8           Mr. Ottolini correctly cites authority holding that the tender rule applies only where a

9    foreclosure is voidable, and not void.  The requirement of tender for a voidable sale is "based on the

10   theory that one who is relying upon equity in overcoming a voidable sale must show that he is able

11   to perform his obligations under the contract so that equity will not have been employed for an idle

12   purpose."  *Dimock v. Emerald Properties LLC*, 81 Cal. App. 4th 868, 878 (emphasis omitted).  "The

13   word void, in its strictest sense, means that which has no force and effect . . . ."  *Little v. CFS Serv.*

14   *Corp.*, 188 Cal. App. 3d 1354, 1358 (1987) (internal quotation marks omitted).  In contrast,

15   "[v]oidable is defined as [that] which may be avoided" or set aside as a matter of equity.  *Id.*

16   (internal quotation marks omitted); *see also Dimock,* 81 Cal. App. 4th at 876 (explaining that a void

17   deed is one that is a "complete nullity with no force or effect as opposed to one which may be set

18   aside but only through the intervention of equity").

19          As to what constitutes a void sale and what constitutes a voidable one, the state court's

20   opinion in *Little* provides some guidance.  According to the court, when a notice defect is at issue, as

21   Mr. Ottolini claims here, it is not the extent of the defect that is determinative.  Rather, "what seems

22   to be determinative" is whether the deed of trust contains a provision providing for a conclusive

23   presumption of regularity of sale.  *Little*, 188 Cal. App. 3d at 1359.  "Where there has been a notice

24   defect and no conclusive presumption language in the deed, the sale has been held void."  *Id.*

25   (emphasis in original).  In contrast, "[w]here there has been a notice defect and conclusive

26   presumption language in a deed, courts have characterized the sales as 'voidable.'"  *Id.*

27          At the hearing, the parties agreed that they would submit for the Court's consideration a copy

28   of the deed of trust so that the Court could evaluate Defendants' tender argument.  The parties did

United States District Court
For the Northern District of California

so, *see* Docket No. 37, and having considered the deed of trust, the Court finds that there is no clear provision providing for a conclusive presumption of regularity of sale.  Admittedly, there is a section which leaves open the possibility that the deed of trust held by the new owner of the property at issue has a such a provision.  *See id.* at 5 (¶ 3(g)) (providing that "Trustee shall deliver to the purchaser its deed conveying the Property so sold" and that "[t]he recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof").  However, that deed of trust is not part of the record, and therefore the Court cannot conclude, at least at this juncture, that the sale is merely voidable wherein tender would be required.

The Court thus declines to dismiss any of the causes of action based on the failure to tender.[1] Moreover, the Court notes that, even if it were to deem the sale a voidable one, that would not automatically result in dismissal of all of the causes of action based on the failure to allege tender. As discussed below, the claims for negligence, fraud, and breach of contract are not predicated solely on alleged irregularities in the sale procedure.  For example, in the negligence claim, Mr. Ottolini alleges that Defendants acted negligently with respect to his loan modification application. *See* Compl. ¶ 44 (alleging that Defendants failed to properly record his support documentation).  Mr. Ottolini also asserts negligence based on Defendants' alleged failure to comply with California Civil Code § 2923.5.  In the fraud claim, Mr. Ottolini alleges that Defendants represented to him that he had until August 7, 2010, to return his loan modification application (thus suggesting that no sale would go forward in July).  *See* id. ¶ 57.  Finally, in the breach-of-contract claim, Mr. Ottolini claims that Defendants breached its HAMP agreement with the federal government by, *e.g.*, not suspending foreclosure while Mr. Ottolini was being considered for loan modification and by not being equipped to handle loan modification.  Therefore, even if the Court were to agree with Defendants' tender argument, only the claim for wrongful foreclosure would be disposed of in its entirety.  It would not dispose of the claims for negligence, fraud, and breach of contract.

The Court now turns to those claims.

---

[1]  This does not mean that Defendants are barred from raising the failure to tender as a defense at a later stage in the proceedings.

C.     Negligence

Although not entirely clear, it appears that Mr. Ottolini's negligence claim is predicated on the following allegations: (1) that Defendants failed to properly record his documentation in support of his loan modification application, *see* Compl. ¶ 44; (2) that Defendants failed to explore options with him to avoid foreclosure as required by California Civil Code § 2923.5, *see id.* ¶ 47; (3) that Defendants failed to post a notice of sale on the property at issue in accordance with California Civil Code § 2924f and thereafter neglected to take any corrective action to make the sale valid and proper, see *id.* ¶ 48; and (4) that Defendants continually misled him and directed him to departments that had no knowledge or power to advise him about what could be done to avoid foreclosure. *See id.* ¶ 50.

With respect to the second claim above – *i.e.*, that Defendants failed to explore options as required by § 2923.5 – Mr. Ottolini has failed to state a claim for relief.  It is true that, under California law, a duty of care may arise through a statute.  *See Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1215 (2008) (noting that "'[a] duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties'").  But to the extent that Mr. Ottolini argues a duty of care based on § 2923.5, he is really bringing a claim for a violation of that statute.  However, a failure to comply with § 2923.5 does not give rise to any damages remedy – only a remedy of a delay in foreclosure.  *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 214 (2010).  To allow § 2923.5 to serve as a statutory basis for a negligence claim would circumvent the limited scope of relief provided by the statute.

As for the third claim – *i.e.*, that Defendants failed to post a notice of sale – here, Mr. Ottolini has also failed to state a claim for relief.  As discussed below, Plaintiff has failed to plausibly allege any damage resulting from the failure to comply with § 2924f.

The first and fourth claims above, however, raise a more complicated question.  Both of these claims relate to Defendants' responses to Mr. Ottolini's efforts to obtain a loan modification or otherwise avoid foreclosure.  Defendants argue that these claims should be dismissed because they did not owe him a legal duty of care.  As Defendants correctly point out, one of the essential

**United States District Court**

For the Northern District of California

1   elements of a negligence claim is a duty of care.  *See Wiener v. Southcoast Childcare Centers, Inc.*,

2   32 Cal. 4th 1138, 1142 (2004) (stating that, "'[t]o prevail on [an] action in negligence, plaintiff[s]

3   must show that defendants owed [them] a legal duty, that they breached the duty, and that the breach

4   was a proximate or legal cause of [their] injuries'").  Furthermore, as Defendants have properly

5   noted, California courts have stated that "a financial institution owes no duty of care to a borrower

6   when the institution's involvement in the loan transaction does not exceed the scope of its

7   conventional role as a mere lender of money."  *Nymark v. Heart Fed. Savs. & Loan Ass'n*, 231 Cal.

8   App. 3d 1089, 1096 (1991).  That is, "[l]iability to a borrower for negligence arises only when the

9   lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money

10  lender.'"  *Id.*

11      Defendants, however, have failed to take the above statements of law in their full context.  In

12  *Nymark*, the borrower asserted a negligence claim against the lender on the theory that the appraisal

13  report ordered by the lender stated that the property was in good condition when it was not.  The

14  court found the lender owed no duty of care to the borrower in this situation because it "performed

15  the appraisal of the plaintiff's property in the usual course and scope of its loan processing

16  procedures to protect defendant's interest" in ensuring adequate security for the loan.  *See id.*

17  (emphasis omitted).  The appraisal was not "intended to induce plaintiff to enter into the loan

18  transaction or to assure him that his collateral was sound."  *Id.* at 1096-97.

19      In support of the statement that a financial institution owes no duty of case to a borrower

20  when its involvement in the loan transaction does not exceed the scope of its conventional role as a

21  mere lender of money, the court cited cases in which a borrower asserted a claim of negligence

22  against a lender for loaning money for a risky business adventure, *see Wagner v. Benson*, 101 Cal.

23  App. 3d 27, 34-35 (1980); *Fox & Carskadon Financial Corp. v. San Francisco Fed. Savings & Loan

24  Ass'n*,  52 Cal. App. 3d 484, 488-489 (1975), or for a project suffering from construction defects.

25  *See Bradler v. Craig*, 274 Cal. App. 2d 466, 473 (1969).  In each case, the plaintiff sought to impose

26  upon the lender liability for activities *outside* the scope of the lender's conventional role in a loan

27  transaction.  It is against this attempt to expand lender liability (to that of, *e.g.*, an investment advisor

28  or construction manager) that the court in *Nymark* found a financial institution owes no duty of care

to a borrower when its involvement in the loan transaction "does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal. App. 3d at 1096. *Nymark* and the cases cited therein do not purport to state a legal principle that a lender can never be held liable for negligence in its handling of a loan transaction within its conventional role as a lender of money.

Importantly, the court in *Nymark* acknowledged that,

> [i]n California, the test for determining whether a financial institution owes a duty of care to a borrower-client "involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Id.* at 1089. Thus, the analysis of duty owed by a lender is not decided categorically (as Defendants suggest), but rather through a multi-factor analysis.

That being said, the Court ultimately concludes that the multi-factor analysis above weighs against imposing a legal duty on Defendants.

First, the extent to which the transaction was intended to affect Mr. Ottolini is somewhat remote under the circumstances of this case. Even if Defendants allegedly mishandled Mr. Ottolini's request for loan modification, the loan modification application was never acted on, either by Countrywide or B of A. This stands in contrast to the facts in *Ansanelli v. JP Morgan Chase Bank*, No. C 10-03892 WHA, 2011 U.S. Dist. LEXIS 32350, at *2 (N.D. Cal. 28, 2011), where the lender agreed to place the borrower on a loan modification plan.

Second, the harm to Mr. Ottolini was not particularly foreseeable since there is no indication that loan modification would actually be approved. Absent a likelihood of approval, Mr. Ottolini suffered no ultimate injury from the mishandling of his application.

Third, the degree of certainty that Mr. Ottolini suffered injury is likewise minimal for the same reason.

Fourth, the closeness of the connection between Defendants' conduct and the injury suffered is similarly remote absent a likelihood that the modification would have been approved.

Fifth, as to the moral blame attached to Defendants' conduct, there is no suggestion that the

United States District Court

For the Northern District of California

1  mishandling of Mr. Ottolini's application was willful or part of a pattern or anything more than

2  ordinary negligence.

3      Finally, the policy of preventing harm cuts both ways.  Imposing negligence liability may

4  give lenders an incentive to handle loan modification applications in a timely and responsible

5  manner.  On the other hand, absent a duty in the first place to modify a loan or even to evaluate such

6  an application under objective standards limiting the lender's discretion,[2] imposing negligence

7  liability for the mishandling of loan modification applications could be a disincentive to lenders

8  from ever offering modification.

9      In sum, under the circumstances of this case, particularly the fact that the application for loan

10  modification had not progressed to a concrete stage and that there is no indication of the likelihood

11  that such an application would have been granted, *cf. Ansanelli,* 2011 U.S. Dist. LEXIS 32350

12  (finding a duty found where lender agreed to place borrower on modification plan), the Court finds

13  there is no duty owed by the Defendants to Mr. Ottolini with respect to his attempt to submit a loan

14  modification application.  In the absence of a duty, the third and fourth negligence claims are

15  without merit.

16      Accordingly, the Court dismisses the negligence claim (including each of the theories

17  discussed above) in its entirety.  Because Mr. Ottolini has already had an opportunity to amend his

18  complaint once, the dismissal is with prejudice.  *See Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.

19  2000) (concluding that district court did not abuse discretion in dismissing without leave to amend

20  because of futility).

21  D.    Fraud

22      Mr. Ottolini's fraud claim has two basic predicates: (1) that the sale date was actually July

23  12, 2010 (as reflected in the notice of trustee's sale) but that Defendants publicized in a newspaper

24  that the sale date was July 8; and (2) that Defendants represented to him that he had until August 7,

25  2010, to return his loan modification application, thus suggesting that no sale would take place until

---

26

27      [2] *See* Cal. Civ. Code § 2923.5 (simply providing that a notice of default may not be filed
    until the mortgagee, trustee, beneficiary, or agent makes initial contact with the borrower to assess
28   the borrower's financial situation and explore options to avoid foreclosure or attempts to make such
    contact with due diligence).

United States District Court

For the Northern District of California

1   after a decision was rendered on his application.  *See Compl.* ¶¶ 55, 57.

2       In the motion to dismiss, Defendants argue that the fraud claim should be dismissed because

3   Mr. Ottolini has failed to allege that he relied on any misrepresentation or that he suffered harm as a

4   result.

5       As Defendants argue, reliance and damages are both essential elements of a claim for fraud.

6   *See In re Estate of Young*, 160 Cal. App. 4th 62, 79 (2008) (stating that "the required elements for

7   claims for fraud [are]: (a) misrepresentation (false representation, concealment, or nondisclosure);

8   (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable

9   reliance; and (e) resulting damage") (internal quotation marks omitted).  With respect to Mr.

10  Ottolini's first theory of fraud, the Court agrees that there is a problem both with respect to reliance

11  and damages.  Regarding reliance, Mr. Ottolini has not specifically alleged that he saw the

12  newspaper publications with the July 8 sale date.  To the extent the complaint could suggest that Mr.

13  Ottolini saw the newspaper publications, *see* Compl. ¶ 36, there is nothing to indicate how he relied

14  on the representations in the newspapers that the sale date was July 8.  For example, given that the

15  actual sale took place *later* than the published sale date, Mr. Ottolini does not explain how he was

16  deprived of an opportunity to do something on July 8, but not on July 12, to prevent foreclosure.

17  While Mr. Ottolini notes that the incorrect sale date may have led potential bidders not to attend the

18  actual sale on July 12, *see* Compl. ¶ 56, he needs to show that he relied, not that others relied.  *See,*

19  *e.g., Varwig v. Anderson-Behel Porsche/Audi, Inc.*, 74 Cal. App. 3d 578, 581 (1977) (holding that

20  defendant's misrepresentation to an automobile dealer was an indirect misrepresentation to the

21  plaintiff, who purchased the car from the dealer); *see also Mirkin v. Wasserman*, 5 Cal. 4th 1082,

22  1096 (1993) (stating that, "[a]s the language of the Restatement indicates, a plaintiff who hears an

23  alleged misrepresentation indirectly must still show 'justifiable reliance upon it'").  As for damages,

24  Mr. Ottolini has failed to show that he was harmed by a sale that took place later, rather than earlier,

25  than the publicized date.

26      In Mr. Ottolini's second fraud theory, he alleges that Defendants misrepresented to him that

27  he had until August 7, 2010, to return his loan modification application.  The problem with this

28  theory is, once again, a lack of reliance.  Mr. Ottolini has failed to explain how he relied on the

United States District Court

For the Northern District of California

1  representation that he had until August 7 to return the application, particularly when the

2  representation was made to him on the same day that the property was sold in foreclosure.  That is,

3  at the point of the alleged misrepresentation, there was nothing Mr. Ottolini could have done to

4  prevent foreclosure.  Mr. Ottolini's real beef with Defendants here is that they essentially extended

5  to him a promise that they would not sell the property until after his loan modification application

6  was reviewed and then failed to abide by that promise.  Such allegations, however, sound more

7  properly in contract rather than in tort.  *See infra*.

8      Accordingly, the Court grants the motion to dismiss the fraud claim.  As above, the dismissal

9  is with prejudice as Mr. Ottolini has already been given an opportunity to amend his complaint, to

10  no avail.

11  E.      Wrongful Foreclosure

12      Mr. Ottolini's claim for wrongful foreclosure has three parts: (1) that Defendants failed to

13  send him a letter telling him about his right to reinstatement (as required by the deed of trust), *see*

14  Compl. ¶ 62; (2) that the published sale date was incorrect (*i.e.*, July 8 instead of July 12, 2010), *see*

15  *id.* ¶ 65; and (3) that Defendants failed to post a notice of trustee's sale on the property at issue (as

16  required by California Civil Code § 2924f(b)(1)).

17      In their motion, Defendants argue that the wrongful foreclosure claim should be dismissed

18  because, even if there were any defects with the foreclosure, Mr. Ottolini has failed to show that he

19  was prejudiced as a result.  *See Knapp v. Dougherty*, 123 Cal. App. 4th 76, 94 (2004) (stating that

20  "courts have rejected claims of deficient notice where no prejudice was suffered as a result of the

21  procedural irregularity"); *see also Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177,

22  1186 (N.D. Cal. 2009) (Ware, J.) (noting the same).

23      The Court agrees with Defendants that Mr. Ottolini has failed to show how he was

24  prejudiced by (1), particularly because the notice of default informed him of the right to

25  reinstatement of the loan.  See Mot. at 9.  Moreover, at the hearing, Mr. Ottolini claimed that he had

26  a family member ready to loan him the amount needed to cure the default, which also reflects that, at

27  the relevant time, he understood he had a right to reinstatement.  As to (3), any prejudice is largely

28  speculative – *e.g.*, it is possible that, if the notice had been posted on the property, a person passing

12

United States District Court

For the Northern District of California

1  by would have seen the notice and then attended the foreclosure sale to make a bid.  But under *Iqbal*

2  and *Twombly*, the mere possibility of such is not enough to withstand a motion to dismiss.

3  Furthermore, if Mr. Ottolini had been informed of the July 12 sale date as a result of a posted notice

4  on the property, there is nothing to indicate that, *e.g.*, he would have been financially able to buy the

5  property himself at the foreclosure sale.

6       With respect to (2), the prejudice issue is admittedly a closer call.  It seems more plausible

7  that an incorrect published sale date could have had an effect on the sale of the property, particularly

8  given Mr. Ottolini's allegation that "no bids were received" on July 12, 2010, and the property was

9  ultimately sold for less than alleged fair market value.  *Id.* ¶ 55 (alleging that the purchase price was

10  $313,000 when the property was worth approximately $650,000).  Nevertheless, the Court

11  concludes that Mr. Ottolini's allegation is still not enough to meet the plausibility standard of *Iqbal*

12  and *Twombly* – *i.e.*, the fact that the purchase price was far below the fair market value is equally

13  consistent with the low purchase prices obtained in foreclosure sales generally.  *See Twombly*, 550

14  U.S. at 557 (stating that there must be, at the pleading stage "allegations plausibly suggesting (not

15  merely consistent with) agreement [i.e., conspiracy]").  Furthermore, if there were one or more

16  buyers truly interested in purchasing the property on July 8, they likely would have pursued the

17  matter after no sale was held on that day.  The public record in the assessor's office, which had the

18  correct July 12 sale date, was publicly available.

19       The Court thus dismisses the claim for wrongful foreclosure.  As with the above claims, the

20  dismissal is with prejudice.  There is nothing to indicate that Mr. Ottolini could plead additional

21  facts to cure the defects identified above.

22  F.   Breach of Contract

23       Mr. Ottolini appears to assert a claim for breach of contract based on three different

24  contracts: (1) an April 2009 agreement between B of A and the federal government (a Servicer

25  Participation Agreement for the Home Affordable Modification Program ("HAMP")), (2) the deed

26  of trust, and (3) an implied promise to suspend foreclosure action while Mr. Ottolini was being

27  considered for loan modification pending return of documents in support of the application by

28  August 7, 2010.

United States District Court

For the Northern District of California

1    According to Mr. Ottolini, under the first contract, Defendants were required by contract

2  with the federal government to temporarily suspend any foreclosure action during the trial period or

3  while a borrower was being considered for alternative foreclosure prevention options – and

4  Defendants failed to do so in his case.  *See* Compl. ¶¶ 73, 77.  Mr. Ottolini also suggests that the

5  government contract was breached because Defendants were not equipped to handle loan

6  modification.  *See id.* ¶ 81.  As for the second contract, *i.e.*, the deed of trust, Mr. Ottolini asserts

7  breach because the deed of trust provided that Defendants had to comply with the posting and

8  mailing requirements of the California Civil Code in the event of a trustee's sale and they did not do

9  so.  *See id.* ¶¶ 82-83.  The third contract appears to be implied as indicated by paragraphs 74-77 of

10  the complaint.

11    To the extent Mr. Ottolini argues breach of the government contract, the claim is dismissed

12  with prejudice.  This is because the contract was one between B of A and the government, and not

13  between B of A and himself; thus, the only way he could have a viable claim would be if he were an

14  intended third-party beneficiary of the government contract.  While Mr. Ottolini correctly points out

15  that one court has concluded that a borrower is an intended third-party beneficiary of a HAMP

16  agreement, *see Marques v. Wells Fargo Home Mortg., Inc.*, No. 09-cv-1985-L(RBB), 2010 U.S.

17  Dist. LEXIS 81879 (S.D. Cal. Aug. 12, 2010), that court is clearly in the minority.  The majority of

18  courts have held to the contrary, noting, *e.g.*, that "it would be unreasonable for a qualified borrower

19  seeking a loan modification to rely on the HAMP servicer's agreement as granting him enforceable

20  rights since the agreement does not actually require that the servicer modify all eligible loans, nor

21  does any of the other language demonstrate that the borrowers are intended beneficiaries." *Hoffman*

22  *v. Bank of Am., N.A.*, No. C 10-2171 SI, 2010 U.S. Dist. LEXIS 70455, at *10 (N.D. Cal. June 30,

23  2010); *see also Ansanelli*, 2011 U.S. Dist. LEXIS 32350 at *17-18 (accord).

24    Of course, in the instant case, Mr. Ottolini is not arguing breach based on a failure to modify

25  his loan.  Rather, he is claiming a breach based on the failure of Defendants to suspend foreclosure

26  while he was being considered for alternative foreclosure prevention options.  That same argument,

27  however, was raised by the plaintiff-borrower in *Hoffman*, and Judge Illston found it unpersuasive,

28  holding that "the contract [still] does not grant third parties enforceable rights.  The distinction

1  plaintiff attempts to raise is of no consequence."[3]  *Id.* at *13; *see also id.* at *7, 9 (noting that, with

2  the beneficiaries of government contracts, the general presumption is that members of the public are

3  incidental beneficiaries without a clear intention otherwise and that clear intent is not satisfied even

4  by a "showing that the contract operates to the third parties' benefit and was entered into with them

5  in mind"; adding that there is no "language in the HAMP servicer's agreement indicating third

6  parties have enforceable rights").

7      As for Mr. Ottolini's contention that Defendants breached the deed of the trust by failing to

8  comply with California statutory law on nonjudicial foreclosures, Defendants contend that this claim

9  should also be dismissed because Mr. Ottolini has failed to show that he was harmed by any failure

10  to comply with the California Civil Code.  As discussed above, Mr. Ottolini has failed to allege

11  prejudice as a result of the alleged notice defects.  Thus, absent a showing of harm, this claim for

12  breach of contract is also dismissed.

13      However, Mr. Ottolini's claim for breach of contract based on Defendants' implied promise

14  not to foreclose until after reviewing his application for loan modification does state a viable cause

15  of action – at least at this juncture in the context of a Rule 12(b)(6) motion.[4]  On the other hand,

16  because this contract claim was not precisely pled, the Court's denial of Defendants' motion to

17  dismiss on this claim is without prejudice.  That is, with respect to this particular contract claim,

18  Defendants are not barred from asserting any defenses, nor are they precluded from filing another

19  _____

20  [3]  In *Rivera v. Bank of America Home Loans*, No. 09 CV 2450 (LB), 2011 U.S. Dist. LEXIS 43138 (E.D.N.Y. Apr. 21, 2011), the Court noted that the agreement between the bank and the federal government contained a provision stating that "'[t]he Agreement shall inure to the benefit of

21  and be binding upon the parties to the Agreement and their permitted successors-in-interest,'" which was indicative of an intent to not have borrowers to enforce the contract.  *See id.* at *17.  In the

22  instant case, however, the Court does not have before it a copy of the relevant agreement.

23  [4]  The Court acknowledges Defendants' point that, as part of the application packet sent to

24  Mr. Ottolini, they included a document stating, in relevant part, that "[i]f foreclosure proceedings started prior to you entering into the Home Affordable Modification Program Trial Period Plan, you

25  will need to continue to respond to all notices while in the Trial Period.  Not responding to any foreclosure notices could affect your legal rights."  Defs.' RJN, Ex. A (answer to fourth frequently

26  asked question); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (stating that, for a Rule 12(b)(6) motion, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1)

27  the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").  The problem for

28  Defendants is that this statement was arguably inconsistent with the representation that Mr. Ottolini had until August 7 to return his application.

United States District Court

For the Northern District of California

1   motion to dismiss directed to this particular claim.  However, the Court will not entertain any such

2   motion until after the parties have completed Alternative Dispute Resolution ("ADR").

3   G.       Infliction of Emotional Distress

4            Finally, in his complaint, Mr. Ottolini raises a claim for infliction of emotional distress.  Mr.

5   Ottolini does not specify whether he intended to plead intentional infliction or mere negligent

6   infliction.  He simply alleges that he has suffered because, as a result of the foreclosure, he had to

7   find a new place for himself and his father to live, and the new place has not been conducive to his

8   father's health.[5]  See Compl. ¶ 94 (alleging that he "suffers daily from watching his father[']s health

9   rapidly deteriorate and spending the majority of his time bed ridden").

10           To the extent Mr. Ottolini intended to plead negligent infliction, California courts have

11   indicated that such a claim is simply a claim for negligence and thus requires a showing of duty.  *See*

12   *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 463 (2003).  As discussed above, Mr. Ottolini has

13   failed to plead duty.

14           To the extent Mr. Ottolini intended to plead intentional infliction, then his claim fails

15   because an essential element of such a claim is outrageous conduct by the defendant.  *See McDaniel*

16   *v. Gile*, 230 Cal. App. 3d 363, 372 (1991) (stating that, "[t]o recover for intentional infliction of

17   emotional distress a plaintiff must show: '(1) outrageous conduct by the defendant, (2) intention to

18   cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional

19   suffering and (4) actual and proximate causation of the emotional distress'").  Here, Mr. Ottolini has

20   not pled such conduct on the part of Defendants.  Courts have emphasized that extreme and

21   outrageous conduct is conduct that "go[es] beyond all possible [bounds] of decency, and [is]

22   regarded as atrocious, and utterly intolerable in a civilized community."  *Mintz v. Blue Cross of Cal.*,

23   172 Cal. App. 4th 1594, 1608 (2009) (internal quotation marks omitted).  *In Mehta v. Wells Fargo*

24   *Bank, N.A.*, No. 10-CV-944 JLS (AJB), 2010 U.S. Dist. LEXIS 88336 (S.D. Cal. Aug. 26, 2010), the

25   court held that even the fact that one of the defendant's employees "allegedly stated that the sale

26   _____
     [5]  The Court notes that, at the hearing, it appeared to be Mr. Ottolini's son, and not Mr.
27   Ottolini himself, who claims to have suffered emotional distress because it seems to be the son has
     had to find a new place for him and Mr. Ottolini, his father, to live.  However, the Court must
28   consider only what is pled in the complaint, and Mr. Ottolini's son is not a plaintiff.  Even if he
     were, the analysis above would not be materially different.

would not occur but the house was sold anyway is not outrageous as that word is used in this context." *Id.* at *48. While outrageous conduct may be established if, *e.g.*, the defendant abuses a relation or position which gives him power to damage the plaintiff's interest, *see McDaniel*, 230 Cal. App. 3d at 372, the court in *Mehta* also noted that a defendant could not be said to abuse a position of power for purposes of an emotional distress claim where the supposed position of power arose solely from the plaintiff's failure to make the required loan payments. *See id.* at *49. The conduct alleged herein fails to rise to the requisite level of outrageousness.

Even if the conduct could be characterized as outrageous, Mr. Ottolini would still have to show an intention to cause emotional distress or at least reckless disregard of the probability of causing emotional distress. *See id.* Here, it is not even clear that Defendants should have known of a probability of causing emotional distress. Nothing indicates, for example, that Defendants were aware that Mr. Ottolini's father needed to live in a certain type of home or his health would decline. *See Ahmed v. Wells Fargo Bank & Co.*, No. C 11-0436 SI, 2011 U.S. Dist. LEXIS 49526, at *17 (N.D. Cal. May 9, 2011) (noting that "[p]laintiff's allegation that defendants 'should have known' of a likelihood of extreme emotional distress . . . cannot establish the required 'intention to cause or reckless disregard of the probability of causing emotional distress'" and "would establish, at most, negligence by defendants as to such a possibility [which is] insufficient").

Accordingly, the claim for infliction of emotional distress is dismissed with prejudice.

///
///
///
///
///
///
///
///
///
///

**III.   <u>CONCLUSION</u>**

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss.  More specifically, the Court dismisses all of the claims, except for the contract claim based on the implied promise to suspend foreclosure action while Mr. Ottolini was being considered for a loan modification.  Each of the claims that is being dismissed is dismissed with prejudice.

This order disposes of Docket No. 31.


IT IS SO ORDERED.


Dated:  August 19, 2011

_____
EDWARD M. CHEN
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAY L. OTTOLINI,,                                     No. C-11-0477 EMC

        Plaintiff,

      v.
                                                     **CERTIFICATE OF SERVICE**
BANK OF AMERICA, *et al.*,

        Defendant.
_____/

      I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California.  On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

Jay L. Ottolini
5381 Faught Road
Santa Rosa, CA 95403
707-953-9705
PRO SE

Dated:  August 19, 2011                              RICHARD W. WIEKING, CLERK


                                                     By: _____/s/  Leni Doyle_____
                                                     Leni Doyle
                                                     Deputy Clerk