UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAY L. OTTOLINI, | No. C-11-0477 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| BANK OF AMERICA, *et al.*, | **(Docket No. 50)** |
| Defendant. | |

Plaintiff Jay L. Ottolini has filed suit against Defendants Bank of America, N.A. ("B of A"); BAC Home Loans Servicing, LP, formerly known as Countrywide ("BAC" or "Countrywide"); and ReconTrust Company, N.A, essentially challenging their actions related to the foreclosure of certain real property. On August 19, 2011, the Court dismissed all of Plaintiff's claims with the exception of breach of contract based on an implied promise not to foreclose while Plaintiff was being considered for a loan modification. Docket No. 41. Pending before the Court is Defendants' motion to dismiss that final claim remaining in the first amended complaint ("FAC"). Docket No. 50. For the reasons stated on the record at the hearing, and as set forth below, the Court **DENIES** the motion to dismiss.

## I. FACTUAL & PROCEDURAL BACKGROUND

In the FAC, Mr. Ottolini alleges as follows. Mr. Ottolini purchased the real property at issue some time before December 2004. *See* Compl. ¶ 9. In December 2004, Mr. Ottolini secured a loan on the property from Investors Trust Mortgage Corp. *See id.* ¶ 10. In February 2005, Countrywide acquired the servicing rights to the loan. *See id.* ¶ 11.

In June 2005, Mr. Ottolini suffered an industrial injury to his back. Thereafter, he was not able to continue his regular employment and began receiving workers compensation benefits. *See id.* ¶¶ 13-14. In July 2008, Mr. Ottolini informed Countrywide that his workers compensation benefits were ending and so he would not have the money to pay his mortgage. *See id.* ¶ 16. Mr. Ottolini asked Countrywide "for solutions and possible modification options [to] the loan." *Id.* Countrywide responded that there were no alternative and that Mr. Ottolini was still required to make the necessary payments. *See id.* ¶ 17.

Mr. Ottolini failed to make the loan payments for September and October 2008. *See id.* ¶ 18. He did, however, make the necessary payment for November 2008 and further sent Countrywide an additional $1,100 "to help cure some of the past due amount." *Id.* ¶ 19. Countrywide returned the payment to Mr. Ottolini. *See id.* ¶ 20. Mr. Ottolini continued to contact Countrywide "in an effort to explore options to avoid foreclosure" but each time he was told that there were not options. *See id.* ¶ 21.

In January 2009, a notice of default was recorded on the property at issue. *See id.* Although a § 2923.5 declaration attached to the notice stated that there had been an attempt to contact Mr. Ottolini with due diligence, that was not in fact the case.[1] Furthermore, when Mr. Ottolini had contacted Countrywide, it never informed him that he had a right to a meeting so that his financial situation could be assessed. *See id.*

After the notice of default was recorded, "Countrywide finally requested a series of documents from [Mr. Ottolini], in order to pursue a modification to the loan." *Id.* ¶ 22. Mr. Ottolini repeatedly provided the requested documents but, according to Countrywide, it never received them. *See id.* ¶¶ 23-25. At some point thereafter, Countrywide was acquired by B of A and then renamed BAC. *See id.* ¶¶ 26-27.

In or about June 2010, the deed of trust was assigned to BAC. *See id.* ¶ 35. In addition, in June 2010, a notice of trustee's sale was recorded which listed as the sale date July 12, 2010. *See id.*

---

[1] California Civil Code § 2923.5 provides in relevant part as follows: "A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g)." Cal. Civ. Code § 2923.5(a)(1).

2

¶ 35. However, that sale date was inconsistent with the sale date that was published in the newspaper. More specifically, on three different dates in June 2010, Defendants publicized in the Sonoma Herald-Recorder a sale date of July 8 instead of July 12. *See id.* ¶ 34.

Prior to the sale date, Mr. Ottolini contacted B of A because he still had not received a response on his loan modification instruction. B of A stated that it was still missing documentation and would send Mr. Ottolini another application. B of A failed to do so, however, and so Mr. Ottolini called B of A again. B of A stated that it would send out a packet. *See id.* ¶ 37.

On July 12, 2010 – *i.e.*, the date of sale – Mr. Ottolini finally received a packet from BAC which contained a loan modification application. "In the packet was a letter dated July 8, 2010, instructing [him] that he had until August 7, 2010[,] to return the financial documents to determine eligibility for the modification programs." *Id.* ¶ 38. "[Mr. Ottolini] immediately called [B of A], to review the packet of received documents. At that time foreclosing defendants informed [him] that nothing further could be done because the property [had] reverted back to the investor." *Id.* ¶ 39.

Subsequently, Mr. Ottolini spoke to various departments within B of A and "was given conflicting information on what had to be done." *Id.* ¶ 40. Approximately a month later, he was served with an unlawful detainer action. *See id.* ¶ 41.

On August 19, 2011, the Court dismissed all of Plaintiff's claims against B of A with the exception of breach of contract based on an implied promise not to foreclose while Plaintiff was being considered for a loan modification. Docket No. 41. Specifically, Plaintiff alleges that Defendants' July 8, 2010 modification application packet gave him until August 7, 2010 to provide requested documents to Defendants, and that Defendants failed to suspend foreclosure during the period in which Plaintiff was being considered for loan modification. FAC ¶¶ 74-77.

The Court indicated that it would entertain a new motion to dismiss on that claim after ADR was completed. *Id.* at 15-16. The parties attended a mediation session on September 30, 2011, but no settlement was reached and that process is now complete. *See* Docket No. 47. Defendants now move to dismiss Plaintiff's remaining claim.

///

///

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

B. Breach of Contract

Mr. Ottolini's remaining claim for breach of contract is based on Defendants' implied promise not to foreclose until after reviewing his application for loan modification. He alleges that Defendants gave him until August 7, 2010 to file the necessary documents to be considered for loan modification, but that Defendants failed to suspend foreclosure until they considered his application. Defendants argue that Mr. Ottolini fails to state a claim under an implied contract theory because (1) there was no mutual agreement to any implied contract terms; and (2) he has suffered no harm.

Under (1), Defendants correctly point out that mutual agreement is an essential element of an implied contract. Mot. at 4; *see* Witkin Summary of California law § 102 (10th ed. 2010) ("The true implied contract, then, consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words."); *see also* Restatement (2d) Contracts § 19 ("Where no particular requirement of form is made by the law a condition of the

validity or enforceability of a contract, there is no distinction in the effect of the promise whether it is expressed in writing, or orally, or in acts, or partly in one of these ways and partly in others."). They claim that the only conduct "alleged in the FAC was a trial payment plan application sent to Plaintiff." Mot. at 4; FAC ¶¶ 74-77. This, they contend, is insufficient to allege any agreement to postpone the foreclosure sale.

However, there is sufficient information from the parties' alleged conduct and communications – including alleged phone conversations, the application packet, and documents included in or arguably incorporated by reference into that application packet – from which to infer a contract as alleged by Plaintiff. In its previous Order, this Court "acknowledge[d] Defendants' point that, as part of the application packet sent to Mr. Ottolini, they included a document stating, in relevant part, that '[i]f foreclosure proceedings started prior to you entering into the Home Affordable Modification Program Trial Period Plan, you will need to continue to respond to all notices while in the Trial Period. Not responding to any foreclosure notices could affect your legal rights.'" Order at 15 n.4 (citing Defs.' RJN, Ex. A (answer to fourth frequently asked question)). But, as the Court noted, "[t]he problem for Defendants is that this statement was arguably inconsistent with the representation that Mr. Ottolini had until August 7 to return his application." *Id.*

Defendants acknowledge the Court's prior statement, but merely respond that this inconsistency "demonstrates the point that there was no mutual agreement to postpone the foreclosure sale while Defendants waited for Plaintiff to submit the loan modification application." Mot. at 5. There are two problems with Defendants' argument. First, that there may some inconsistency or confusion as to the meaning of different statements does not conclusively demonstrate a lack of mutual agreement; indeed, such confusion is at the heart of any contract dispute. *See, e.g.*, Restatement (2d) Contracts § 20 ("[M]aterial differences of meaning are a standard cause of contract disputes, and the decision of such disputes necessarily requires interpretation of the language and other conduct of the parties in the light of the circumstances."). Thus, it will be up to the trier of fact to determine the reasonable meaning of the parties' respective statements and conduct in their full context, a process not suited for a motion to dismiss.

5

1  Second, it is not clear, drawing inferences in Plaintiff's favor as the Court is required to do,
2  that the statement in the application packet actually indicates that the application "is not meant to
3  have any effect on the foreclosure proceedings," as Defendants contend. Mot. at 4-5. As Plaintiff
4  explains in opposition, Defendants' representations in context indicate that foreclosure proceedings
5  will not go forward as long as the debtor complies with the terms of the modification. The above-
6  quoted statement that failure to respond to notices could affect Plaintiff's rights is preceded by the
7  statement, "If foreclosure proceedings have already started, we will not conduct a foreclosure sale as
8  long as you comply with the terms of the Trial Period Plan." Opp. at 12; *see* Defs.' RJN, Ex. A
9  (answer to fourth frequently asked question). If Defendants have committed to suspend foreclosure
10 proceedings during a Trial Period Plan, it is reasonable to infer that they have also committed to
11 suspend foreclosure proceedings while they consider whether to admit someone into the Plan.
12 Otherwise, a deadline of August 7 to submit materials would be meaningless, as Plaintiff's real
13 deadline would be before the foreclosure sale takes place. Indeed, Plaintiff points to portions of a
14 website explicitly referenced in the modification letter that support this interpretation. For example,
15 one portion of the website states that "[a]ny foreclosure action will be temporarily suspended during
16 the trial period, *or while borrowers are considered for alternative foreclosure prevention options*."
17 Opp. at 7 (citing Opp. Ex. B) (emphasis added). Another page referenced in the letter states more
18 expressly, "Servicers must not conduct foreclosure sales on loans previous referred to foreclosure . .
19 . during the 30-day period that the borrower has to submit documents evidencing an intent to accept
20 the Trial Period Plan offer." *Id.* (citing Opp. Ex. C). Plaintiff's purported interpretation asserting an
21 agreement between the parties is therefore plausible.

22  Defendants point out that it is not entirely clear what conduct forms the alleged implied
23 contract here. It could be largely the letter itself, along with its attachments and references.
24 However, Plaintiff also states that Defendants "confirmed plaintiffs [sic] eligibility to be considered
25 for a modification" over the phone and "Plaintiff accepted defendants [sic] offer and defendants [sic]
26 representative instructed plaintiff he had until August 7, 2010 to return the financial documents
27 required for approval into HAMP." Opp. at 6-7. Plaintiff also alleges that Defendants had already
28 confirmed over the phone that he met the requirements for the program before sending him a

financial information packet. *See* Opp. at 6 (quoting portion of Defendants' website that indicates they will "review you situation, confirm that you meet the requirements for this program and then send you a financial information packet."); FAC ¶ 37 ("Plaintiff again called BofA, inquiring where the information was and was informed again that a packet would be sent out."); ¶ 57 ("Defendants verbally and in writing conveyed to Plaintiff that plaintiff had until August 7, 2010 to return to the new modification application."). Under this theory, the offer and acceptance could have taken place over the phone, and the letter was merely a confirmation of that implied contract. Alternatively, the oral communication along with the written materials might constitute the alleged contract. The application did not include an integration clause. Despite Defendants' protestations to the contrary, any combination of these statements and conduct can constitute an implied contract not to foreclose on Plaintiff's home until after considering Plaintiff for loan modification. *See* 1 Witkin Summary of California Law Contract § 117 ("A manifestation may be made 'even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined.'").

Defendants' only argument in reply is that Plaintiff merely offers his own interpretation of the application, but that he "does not dispute that Defendants clearly did not interpret the application in the same way." However, Defendants' subjective interpretation is irrelevant under California's objective theory of contracts. 1 Witkin Summary of California Law Contracts § 116 ("[T]here need not be a subjective meeting of the minds; in the absence of fraud, mistake, etc. . . . , the outward manifestation or expression of consent is controlling."); *Donovan v. Rrl Corp.*, 26 Cal. 4th 261, 271 (2001) (finding error where court determined no assent based on subjective good faith mistake in advertised price because the relevant inquiry was the "objective interpretation of defendant's assent as reflected in" its conduct). Moreover, Defendants are wrong that Plaintiff only offers his own subjective interpretation; instead, he offers one plausible theory for how the application can be read "in [its] ordinary and popular sense." Opp. at 11 (citing Cal. Civ. Code § 1644).

Accordingly, there is sufficient information in the modification letter and the documents to which it refers from which a trier of fact could conclude that the parties intended to suspend foreclosure at least until Defendants reviewed Plaintiff's application.

As for Defendants' second argument, Defendants contend that Plaintiff was not harmed by any breach because the sale took place on the same day Plaintiff received the application, and Plaintiff "cannot show that he lost any money as a result of the breach, that he could have cured his default were it not for the breach, that the sale was procedurally improper as a result of the breach, or that he was harmed in any other way." Mot. at 5. While Defendants are correct that the FAC is not a model of clarity, it is sufficient for purposes of a motion to dismiss. Had the foreclosure not occurred and Plaintiff's application for loan modification been accepted, the foreclosure might have been prevented. If the modification failed, Plaintiff states that he nonetheless would have been able to cure his default because he had secured assistance from a family member to pay the past due balance. Opp. at 9-10. Plaintiff states the failure to suspend the foreclosure caused him harm in the form of lost revenue from rentals of livestock boarding on the property, a negative impact on his credit report, lost livestock, and negative health consequences.

While these allegations are not expressly contained in the FAC, Plaintiff has explained his theory, and given his pro se status and the fact that Defendants do not rebut or respond to Plaintiff's proffered allegations of damages, the Court concludes the purpose of the notice pleading is satisfied. Accordingly, the Court finds that damages are apparent in this case, where the gravamen of Plaintiff's complaint is that Defendants wrongfully and prematurely foreclosed on his home before considering him for loan modification or giving him an opportunity to cure his default.

The Court therefore **DENIES** Defendants' motion to dismiss.

This order disposes of Docket No. 50.

IT IS SO ORDERED.

Dated: December 6, 2011

_____
EDWARD M. CHEN
United States District Judge